IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GURANITA L. MILTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-CV-428-SMD |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION & ORDER**

Plaintiff Guranita L. Milton ("Milton") applied for a period of disability and disability insurance benefits ("DIB") on May 13, 2019, alleging she became disabled on November 14, 2017. (Tr. 108). Milton's applications were denied at the initial administrative level on July 19, 2019. (Tr. 78-83). She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on January 11, 2021, that Milton was not disabled. (Tr. 23-35). Milton appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. (Tr. 9-14). Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Milton appeals under 42 U.S.C. § 405(g). For the following reasons, the undersigned AFFIRMS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 21); Def.'s Consent (Doc. 20).

## I.  STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

>(1) Is the person presently unemployed?
>(2) Is the person's impairment severe?
>(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

2

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II. STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Milton was 48 years old on her alleged disability onset date. (Tr. 33). She has a limited education and past relevant work experience as a certified nurse aid. (Tr. 33). Milton alleged disability due to cervical and lumbar degenerative disc disease, cervical radiculopathy status-post anterior cervical discectomy and fusion, cervicalgia, lumbar spondylosis and sacroiliitis, ankylosing spondylitis, headaches, obesity, hypertension, vitamin D deficiency, insomnia, obstructive sleep apnea, daytime hypersomnolence, leukocytosis, and a fractured fifth right toe. (Tr. 25-26).

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Milton's disability determination. At step one, the ALJ found Milton has not engaged in substantial gainful activity between November 14, 2017, her alleged onset date, and June 30, 2019, her last insured date. (Tr. 25). At step two, the ALJ found Milton suffers from the following severe impairments: cervical and lumbar degenerative disc disease, cervical radiculopathy status-post anterior cervical discectomy

and fusion, cervicalgia, lumbar spondylosis and sacroiliitis, ankylosing spondylitis, headaches, and obesity. (Tr. 25). At step three, the ALJ found Milton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 27).

The ALJ proceeded to determine Milton's RFC, holding she has the capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) with some additional postural and environmental limitations. (Tr. 28). At step four, the ALJ found Milton cannot perform any past relevant work. (Tr. 33). At step five, the ALJ, considered Milton's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that Milton can perform. (Tr. 34). Accordingly, the ALJ found Milton was "not disabled" at any time between November 14, 2017, her alleged onset date, and June 30, 2019, the date last insured. (Tr. 34).

**IV.   MILTON'S ARGUMENTS**

Milton argues the ALJ committed reversable error for three reasons. Pl.'s Br. (Doc. 14) at 1. First, Milton contends that the ALJ "failed to appreciate the severity of [her] rheumatologic disorder[.]" *Id.* Second, Milton argues that the ALJ "erred in his evaluation of [her] statements regarding the nature and limiting effects of her symptoms[.]" *Id.* Third, Milton claims that the ALJ "erred in his evaluation of medical opinions[.]" *Id.* Because the undersigned finds no reversable legal error in the ALJ's opinion and the ALJ's findings were supported by substantial evidence, this Court affirms the Commissioner's decision.

V.  ANALYSIS

   A. **Substantial evidence supports the ALJ's evaluation of Milton's rheumatologic disorder.**

Milton argues that the ALJ failed to adequately credit her rheumatologic disorder, ankylosing spondylitis, when evaluating her claim. Specifically, Milton argues the ALJ did not appreciate the severity of her disorder, and the ALJ should have acknowledged the disease's progressive nature and considered a later onset date rather than deny Milton's claim. To support her argument, Milton chronicles the medical evidence in the record before the ALJ. *Id.* at 5-7. The Commissioner responds, while also pointing to the medical records, that the ALJ found Milton's condition to be a severe impairment that was accounted for in the RFC. Comm'r Resp. (Doc. 18) at 3-4. Essentially, Milton is asking this Court to hold the Milton's severe impairment is more limiting than the ALJ already expressly credited. The Court declines Milton's invitation to elude the substantial evidence standard of review and finds no reversable error in the ALJ's evaluation of Milton's ankylosing spondylitis diagnosis.

Determining a claimant's RFC is within the ALJ's discretion, so long as the ALJ's holding is supported by substantial evidence. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). The ALJ arrives at an RFC by reviewing the record as a whole, not by focusing on one piece of evidence to the exclusion of all others. 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record."). As noted, this Court's review of an ALJ's RFC is limited

in scope, and this Court will not reweigh the evidence presented to the ALJ or substitute its judgment for the Commissioner's. *Cornelius*, 936 F.2d at 1145. In fact, "[e]ven if the evidence preponderates against the [ALJ's] findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

Here, Milton asks this Court to improperly reconsider the evidence, disregard the ALJ's decision, and substitute its judgment for the Commissioner's as to the severity of Milton's rheumatologic disorder. In support of her argument, Milton provides online materials offering information about her disorder, but Milton cites to no controlling law. Pl.'s Br. (Doc. 14) at 6-7. Nevertheless, a review of the evidence on which the ALJ relied in reaching his decision demonstrates that the ALJ's opinion is supported by substantial evidence.

For example, the ALJ carefully considered and discussed the medical records of Milton's rheumatologist, Dr. Jacquelin Chua, in reaching his impairment decision. (Tr. 30-31). The ALJ highlighted that Milton first presented to Dr. Chua upon the referral of Milton's primary care physician, Dr. Myrtle Goore, on June 7, 2019. (Tr. 30). Upon noting multiple abnormal findings, as the ALJ chronicled, Dr. Chua ordered radiological imaging on Milton's hands and lumbar spine, prescribed meloxicam, and recommended weight loss. (Tr. 31). At the next visit, Dr. Chua conducted a physical exam in which she "observed tenderness, limited range of motion and bony deformities, but noted there was no synovitis in [Milton's] hands and that [Milton] was able to form a full fist with each hand." (Tr. 31).

Moreover, Dr. Chua noted that Milton "maintained a full range of motion in her wrists with no synovitis, had full extension of her elbows, a full active range of motion in her shoulders bilaterally, good external and internal rotation in her hips, and a full range of motion in her ankles with no synovitis." (Tr. 31). After recognizing some tenderness upon palpation in Milton's knees and multiple fibromyalgia tender points, Dr. Chua ordered a lumbar MRI and prescribed Celebrex. (Tr. 31).

A month later, on August 8, 2019, Dr. Chua diagnosed Milton with ankylosing spondylitis. (Tr. 32). Dr. Chua continued Milton on Celebrex and prescribed Humira for pain. (Tr. 32). In January 2020, Dr. Chua, following an examination showing some normal and some abnormal findings, prescribed 800mg ibuprofen for Milton's pain in place of Humira. (Tr. 32). Two months later, Dr. Chua completed a Physical Capabilities Evaluation form, which the ALJ ultimately found generally unpersuasive. (Tr. 32). Notably, the ALJ's comprehensive survey of Dr. Chua's records about Milton's ankylosing spondylitis was supported by citations to the evidentiary record. (Tr. 30-32).

Given this extensive examination and summarization of Dr. Chua's records regarding Milton's rheumatologic disorder, the undersigned finds that substantial evidence supports the ALJ's decision. Indeed, the ALJ recognized Milton's ankylosing spondylitis as a severe impairment and adjusted Milton's RFC determination to account for the rheumatologic disorder. That Milton believes the ALJ should have found her already severe impairment to be even more severe, without a showing that the ALJ's decision neglected evidence or was unsupported, is not reversable error. Milton asks this Court to read Dr. Chua's records, along with the online medical literature cited to by Milton and reach a

different conclusion about the severity of her disorder. This calls for impermissibly reweighing evidence. The ALJ's decision is supported by substantial evidence cited to by the ALJ. Furthermore, as the ALJ accepted Milton's rheumatologic disorder diagnosis and incorporated it into his decision, there was no need for the ALJ to revise the alleged onset date for Milton's disability.

**B. The ALJ sufficiently weighed Milton's subjective limitation complaints.**

Milton next contends the ALJ erred by failing to credit Milton's subjective complaints of pain and impairment severity. Specifically, Milton argues that her hearing testimony, "as well as statements to treating sources and the State agency, about her symptoms, aggravating factors and functional limitations has [sic] been consistent. The ALJ is alone in doubting Ms. Milton's veracity." Pl.'s Br. (Doc. 14) at 12. Milton adds that the ALJ noted the relevant Social Security regulations for evaluating subjective complaints from claimants but failed to apply them to her case. *Id.* at 11. Despite these arguments, Milton does not state how—even if the ALJ failed to properly evaluate her subjective complaints—that error was not harmless because the ALJ incorporated Milton's diagnosis as a severe impairment and provided additional limitations based on her rheumatologic disorder.

The Commissioner responds to Milton's assertions by pointing to numerous instances in Milton's medical records that the Commissioner maintains are inconsistent with Milton's subjective complaints. Comm'r Resp. (Doc. 18) at 5-7. The Commissioner adds that the ALJ adequately considered Milton's subjective complaints, found they "could

9

reasonably be expected to produce some of the alleged symptoms," but held Milton's complaints not to be entirely consistent with the medical evidence. *Id.* at 8.

A Social Security claimant may prove disability through subjective testimony regarding their symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability based upon subjective complaints, a claimant must provide: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence meeting this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including: objective medial evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4). If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

Milton claims the ALJ failed to properly credit her symptom complaints in three contexts: her statements to her treating physicians, her report to the state agency tasked with the initial disability determination, and her testimony at her disability hearing. Pl.'s Br. (Doc. 14) at 7-8. First, Milton recalls she told Dr. Goore on April 29, 2019, that she had pain in her neck and back that radiated bilaterally into her arms. *Id.* at 7 (citing Tr. 375). Likewise, Milton told Dr. Chua in June 2019 that she experienced "severe (10/10),

10

constant, aching, throbbing and dull pain in her shoulders, hips, knees, back, and since the 2017 surgery[–]her neck." *Id.* at 7-8 (citing Tr. 365). Milton adds that she told Dr. Chua that her "[s]ymptoms were aggravated with lifting, range of motion, getting out of bed and transitioning from sitting to standing." *Id.* at 8 (citing Tr. 365). Likewise, Milton informed Dr. Chua that she had "[a]ssociated symptoms [of] morning stiffness (lasting five-to-six hours), weakness, numbness, tingling, swelling, headaches, and 'feeling sickly, unusual fatigue.'" *Id.* (citing Tr. 365).

Second, Milton completed a disability report for her state agency initial disability determination. On that document, Milton said "she cannot work as a result of degenerative disc disease, herniated disc, acute headaches, left upper extremity numbness and weakness; and high ANA with hand, neck, shoulder, back, and foot swelling." *Id.* (citing Tr. 125-33). During a subsequent phone call with the state agency, Milton stated she endured "neck, shoulder and back pain; left arm numbness and tingling; occasional headaches; and hand and foot swelling." *Id.* (citing Tr. 150). Milton also completed a Function Report on May 28, 2019, in which she claimed that "her husband and kids help around the house; she cooks less and it takes hours to finish; she is no longer able to work, clean her house well, attend her children's extra activities, or enjoy family trips." *Id.* (citing Tr. 143-44). Moreover, Milton stated on the Function Report that "[i]t is difficult [for her] to sleep; she is restless because she is 'hurting in her neck[,] back[,] and knees even after pain med[ications]." *Id.* (citing Tr. 143-44). Finally, Milton reported that "[h]er ability to attend to personal care is disrupted because it is difficult for her to lift her arm, put on or tie shoes, and she cannot hold her arms up long enough to do her own hair." *Id.* (citing Tr. 143-44). This is in addition

11

to Milton's expressed inability to do yard work "[b]ecause [she] hurt[s] ALL THE TIME."

*Id.* (citing Tr. 145) (emphasis in original).

Finally, Milton testified about her symptoms at her hearing before the ALJ. Milton points to the following relevant testimony:

> [S]he testified she has constant neck pain that radiated into her shoulders and down her arms with episodic weakness and hand swelling. Ms. Milton has intermittent low back pain that radiated into her hips, and episodic foot and ankle swelling. Tr. 53-55. She has headaches two or three times a week, lasting for hours; at the onset of one, she will 'take a pain pill and just lay down.' Tr. 56. She has three-to-four 'bad days' a week, back and neck pain is 10/10, and on good days at 5-6/10. Tr. 55-56. Ms. Milton can lift a gallon of milk. On a 'good day' she can stand for an hour, shop (with help), and she tackles household chores in parts, with breaks in between, but is not always able to finish. Tr. 57.

*Id.* (citations to transcript in original).

Despite Milton's claims to the contrary, the ALJ meticulously studied and summarized the objective medical evidence, as well as Milton's own testimony, and applied the proper legal standards to that evidence. (Tr. 28-33). The ALJ first determined, based on Milton's testimony, that Milton's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 28). Yet, the ALJ found Milton's comments regarding the severity of her limitations not to be entirely consistent with the medical evidence, saying:

> Based on the foregoing, the undersigned finds that the claimant's allegations regarding the severity of her pain and other symptoms are without substantial support from the objective medical evidence of record as detailed above. More specifically, the claimant's allegations regarding the limitations on her ability sit, stand and walk are wholly unsupported by the records from Dr. Goore, Dr. Ryan and Dr. Chau, whose examinations have revealed [sic] that she walks with a normal gait, is able to form a fist, and has exhibited no abnormalities in terms of her motor strength. Moreover, the claimant

objective examinations have shown that she has maintained a full range of motion throughout her upper extremities and has pursued conservative treatment since undergoing surgery on her alleged onset date.

(Tr. 33). Although Milton may disagree with the ALJ's conclusion regarding the consistency of her complaints with the medical evidence, she cannot reasonably maintain that the ALJ did not engage in a comparative analysis between her statements and the medical records. The ALJ acknowledged Milton's subjective complaints but noted that the medical evidence demonstrated improvement of Milton's symptoms and response to treatment, which often was conservative rather than invasive. (Tr. 33). Even while discounting some of Milton's subjective complaints, the ALJ included additional postural and environmental limitations in her light work RFC. Substantial evidence supports the ALJ's evaluation of Milton's subjective testimony. Moreover, assuming *arguendo* that it did not, Milton has not shown how any error in assessing Milton's complaints would not be harmless given the ALJ's holding that Milton can only perform light work with other postural and environmental limitations.

**C. The ALJ did not err in his evaluation of the medical source opinions.**

Milton alleges the ALJ improperly evaluated the medical source opinions of Dr. Chua and Dr. R. Glenn Carmichael, who was hired by the state agency to review Milton's records. Pl.'s Br. (Doc. 14) at 13. Dr. Chua primarily expressed her opinion through a Physical Capacities Evaluation form and Clinical Assessment of Pain. (Tr. 424-25). In her evaluation, Dr. Chua opined that in a typical eight-hour workday Milton could sit and walk for three hours at one time as well as walk three hours and sit four hours total through a day. (Tr. 424). Dr. Chua confusingly added Milton could stand for four hours at a time but

13

only three hours per day. (Tr. 424). Dr. Chua further postulated that Milton could never lift nor carry more than twenty pounds, but she could use her hands to continuously do simple grasping, pushing and pulling of arm control, and fine manipulation and frequently use feel for pushing and pulling of leg controls. (Tr. 424).

Dr. Chua continued that Milton could continuously reach overhead, occasionally stoop, crouch, kneel, and balance, and never crawl or climb. (Tr. 424). Dr. Chua opined Milton could frequently drive auto equipment but never work with activities involving unprotected heights, be around moving machinery, be exposed to marked changes in temperature and humidity, or be exposed to dust, flames, or gas fumes. (Tr. 424). Dr. Chua added Milton would likely miss three days of work per month because of her impairments. (Tr.424). Speaking about Milton's pain, Dr. Chua opined that Milton's "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work." (Tr. 425). Dr. Chua added that physical activity would "[g]reatly increase[] [Milton's] pain and to such a degree as to cause distraction from task or total abandonment of task." (Tr. 425). Finally, Dr. Chua opined as to side effects from Milton's medications for her impairments: "Some limitations may be present but not to such a degree as to create serious [p]roblems in most instances." (Tr. 425).

The ALJ found Dr. Chua's opinions largely unpersuasive. (Tr. 32). The ALJ said the following of Dr. Chua's postulations:

> After careful consideration, the undersigned finds Dr. Chua's opinion is largely unpersuasive because the objective evidence, including her own examination findings that documented only some tenderness in her knees and an unspecified number of positive fibromyalgia tender points. Notably, Dr. Chua did not observe any abnormalities in her hands until after her date last

14

>insured and specifically noted that she was able to form a fist with both hands. Accordingly, Dr. Chua's opinion regarding the severity of the claimant's pain and the limitations on her ability to stand, walk and sit are not supported by the documentary evidence of record including by the opinion of Dr. Carmichael.

(Tr. 32).

Milton argues the ALJ improperly evaluated Dr. Chua's opinions. Pl.'s Br. (Doc. 14) at 14-16. Milton claims the ALJ owed deference to Dr. Chua's opinion because she is a specialist and Milton's treating physician. *Id.* at 14-15. The Commissioner responds by noting Milton's argument rests on an incorrect statement of the law. Comm'r Resp. (Doc. 18) at 9-11. Specifically, the Commissioner notes that the Social Security Administration promulgated new regulations on March 27, 2017, and those revised regulations do not distinguish between treating and specialist physicians. *Id.* Because Milton filed her claim after March 27, 2017, her application is subject to the revised regulations. To the extent Milton asserts that the new regulations did not abrogate Eleventh Circuit precedent requiring an ALJ to show good cause for disregarding opinions from treating sources, courts have rejected that argument. *See, e.g.*, *Douglas v. Saul*, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021); *Torres v. Comm'r of Soc. Sec.*, 2020 WL 5810273, at *4 (M.D. Fla. Sep. 20, 2020). Accordingly, the revised regulations apply.

When evaluating a medical opinion's persuasiveness, an ALJ may consider the factors of supportability, consistency, relationship with the claimant, specialization, and other facts tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(3). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2). While an ALJ need not articulate how he applied each factor to the

medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency. *Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021). Otherwise, a reviewing court cannot meaningfully assess the ALJ's consideration of the opinion. *Id.*

The ALJ detailed Dr. Chua's opinions, as well as Dr. Carmichael's, along with the medical evidence in the record, including Dr. Chua's treatment notes. From that review, the ALJ concluded Dr. Chua's restrictive opinions were not supported by her own treatment history and observations of Milton through the course of her relationship as Milton's rheumatologist. The ALJ pointed specifically to Dr. Chua's observations that Milton only displayed tenderness in a few situations and Milton was able to form a fist with both hands and did not display tenderness in her hands until after her last insured date. (Tr. 32). Likewise, the ALJ acknowledged Dr. Chua's opinion was not consistent with Dr. Carmichael's, which the ALJ found generally persuasive. This provides ample support in the record for the ALJ's decision, and the ALJ's finding that Dr. Chua's opinion was generally unpersuasive is based on substantial evidence.

Milton also claims the ALJ should not have found Dr. Carmichael's opinion generally persuasive. Pl.'s Br. (Doc. 18) at 15. Milton's primary contention is that Dr. Carmichael was a reviewing, non-treating physician who was not a specialist in rheumatology, thus the ALJ should not have credited his opinion to the detriment of Dr. Chua's. *Id.* Furthermore, Milton asserts the ALJ should not have credited Dr. Carmichael's opinion because it focused solely on Milton's spinal impairments. *Id.* The Commissioner responds that there is no distinction between treating and non-treating physicians under the

new regulations, nor do the regulations expressly distinguish between specialists and general physicians. Comm'r Resp. (Doc. 18) at 9-13. Additionally, the Commissioner argues that the ALJ, while finding Dr. Carmichael's opinion about Milton's spinal impairments generally persuasive, nevertheless rendered a more stringent RFC than that recommended by Dr. Carmichael. *Id*. This, according to the Commissioner, demonstrates the ALJ considered Dr. Carmichael's opinion as part of the evidence rather than copying Dr. Carmichael's recommendations verbatim. *Id.* at 13.

> In finding Dr. Carmichael's opinion generally persuasive, the ALJ said:
>
> The undersigned has also considered the assessment of the State agency reviewing physician, Dr. R. Glenn Carmichael, who determined on July 11, 2019, that the claimant was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Dr. Carmichael also found the claimant could frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds, and could frequently, stoop, kneel, crouch and crawl. He further determined the claimant could frequent reach overhead bilaterally and that she should avoid concentrated exposure to extreme cold, extreme heat, vibration and hazards. (Ex. 1A). This opinion is generally persuasive because Dr. Carmichael's findings support to the conclusion that the claimant is not disabled and is consistent with the evidence of records, which shows that following her cervical spine surgery, the claimant has pursued conservative treatment options and her physical examination findings have remained unchanged with relatively minor abnormalities as stated herein above and directly below.

(Tr. 32-33).

The Social Security regulations do not distinguish between treating and non-treating sources, nor between specialists and general physicians. *See* 20 C.F.R. § 404.1520c(c)(1)-(3). The factors of supportability and consistency, as previously noted, are most important to the ALJ's treatment of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Here, substantial

evidence supports the ALJ's finding that Dr. Carmichael's opinion was generally persuasive. The ALJ specifically pointed to evidence in the record that provided support for and was consistent with Dr. Carmichael's postulations. (Tr. 33). The ALJ, for instance, highlighted Milton's conservative treatment and that her physical examinations remained mostly unchanged except for a few abnormalities. (Tr. 33). These references to specific record evidence demonstrate that the ALJ's decision was supported by substantial evidence. Additionally, Dr. Carmichael found Milton could engage in medium work, but the ALJ reduced Milton to only light work with additional postural and environmental limitations. (Tr. 28, 71-74). This indicates the ALJ did not accept Dr. Carmichael's opinion and ignore the remainder of the medical and subjective evidence. Instead, the ALJ considered Dr. Carmichael's opinion as part of the record as a whole. Therefore, the undersigned finds substantial evidence supports the ALJ's treatment of Dr. Carmichael's opinion.

## VI.   CONCLUSION

Accordingly, it is ORDERED that the Commissioner's final decision is AFFIRMED. A separate final judgment will issue.

DONE this 22nd day of November, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE